**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


**NAZ, LLC**                                                    **CIVIL ACTION**


**VERSUS**                                                      **NO: 17-5697**


**UNITED NATIONAL**                                            **SECTION: "H"(1)**
**INSURANCE COMPANY**



## ORDER AND REASONS

Before the Court are Defendant United National Insurance Company's ("UNIC") Motion for Summary Judgment on Untimeliness (Doc. 62) and Motion for Summary Judgment on Coverage (Doc. 65). For the following reasons, the Motions are GRANTED.


## BACKGROUND

This case arises out of an insurance contract dispute between Naz LLC ("Naz"), the owner of a medical facility, and its insurance provider, United National Insurance Company ("UNIC"). Naz brings suit against UNIC for breach of the insurance contract and breach of the duty of good faith and fair dealing, stemming from water damage at its facility.

Plaintiff alleges that on January 15, 2015, its facility suffered water damage when rain water entered the building during a thunderstorm. Plaintiff alleges that rain water entered the facility through a hole that had developed in the roof during the repairs of its MRI machine. Plaintiff alleges that the hole developed when repairmen force quenched the MRI machine, which forced high-pressure, freezing cold helium gas through a vent pipe in the ceiling, causing the sealant on the vent pipe to break apart. Plaintiff first submitted a claim to UNIC for the damages on December 17, 2015, after all of the damage had been repaired. After a protracted claims adjustment process, Plaintiff filed this suit on April 20, 2017. Defendant has filed two motions for summary judgment, alleging (1) that the suit is untimely pursuant to the two-year limitation in the policy, or (2) that the policy does not offer coverage. Plaintiff opposes.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1]  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3]  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden

---

[1] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[3] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).

shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7]  Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW & ANALYSIS

### A. Breach of Insurance Contract

Defendant first alleges that Plaintiff's claims are untimely pursuant to the policy provision that provides that legal action must be taken within two years of the date of physical loss or damage.[9] Indeed, Plaintiff's claim for breach of insurance contract, filed on April 20, 2017, for the January 15, 2015 loss is facially prescribed.  The burden therefore shifts to Plaintiff to show that its claim is not prescribed.[10] Plaintiff argues that Defendant's conduct

---

[4] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

[5] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[6] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[7] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[8] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[9] Such provisions are valid under Louisiana Revised Statutes § 22:868.

[10] Estate of DeGraauw v. Travelers Ins. Co., 940 So. 2d 858, 863 (La. App. 3 Cir. 2006).

constitutes a waiver of the limitation period because its conduct was intended to prevent Plaintiff from filing suit.[11] Specifically, Plaintiff alleges that Defendant's conduct was sufficient to lull a reasonable insured into inaction or the belief that its claim would be settled amicably.

The following facts are not in dispute. Plaintiff first filed a claim with Defendant on December 17, 2015, more than eleven months after the damage and after all repairs had been made, alleging that wind had damaged the facility's roof. On February 3, 2016, Defendant sent the first of three reservation of rights letters, which noted potential coverage issues and directed Plaintiff to specific policy provisions that could exclude or limit coverage. Defendant sent similar reservation of rights letters on September 23, 2016, and December 7, 2016.

On March 25, 2016, UNIC adjuster, Dave Costa, first met with Dr. Morteza Shamsnia, Naz's owner, regarding the damage. Shamsnia then related that the MRI machine was vibrating excessively, and in an attempt to repair it, engineers quenched the machine by releasing helium through a pipe that went out of the roof of the facility. He claimed that the quenching process caused a hole in the roof allowing rain water into the building. Based on this explanation, Costa submitted a report to UNIC recommending denial of coverage, but a denial was not communicated to Plaintiff. Costa continued to investigate the claim and repeatedly requested information and documentation from Shamsnia. Throughout the course of the claims adjustment process, Costa made numerous requests to Shamsnia for photographs of the damage and receipts for the repairs. He also attempted to schedule an engineer inspection but an agreeable date was never selected.

---

[11] Plaintiff also briefly mentions an argument of equitable estoppel. However, because this argument is merely stated in conclusory fashion and is not clearly briefed, the Court need not address its merit. *See* United States v. Volksen, 766 F.2d 190, 193 (5th Cir. 1985).

On August 11, 2016, Shamsnia provided Costa with five photos of water present in the MRI room. Shamsnia did not, however, provide any photos of the roof damage or documentation of the repairs that were done. In addition, the investigation and subsequent conversations with Shamsnia revealed several new and differing theories of causation that materially affected coverage.

In November 2016, Shamsnia filled out a Proof of Loss form and appended a causation analysis completed by experts that he had personally hired. On December 7, 2016, Defendant sent its third reservation of rights letter to Shamsnia advising that it was rejecting the Proof of Loss in its entirety for failure to provide documentation to support the damages and because the investigation into the cause of the damage was ongoing. It further advised that UNIC had retained counsel to investigate the claim. Defendant did not respond to a December 28 letter from Plaintiff inviting it to bring an engineer to the property to investigate its claim.

Plaintiff alleges that, based on these facts, Defendant's "bad faith, material misrepresentations, and intentional omissions" have resulted in waiver of the limitations period. It argues that it was lulled into inaction by Defendant's conduct, namely (1) late requests for additional information, (2) prolonged and continuous communication, and (3) intentional delay.

Under Louisiana law, the limitations period in an insurance policy is considered waived if the actions of the insurer "led plaintiff to reasonably believe the insurer would not require compliance with the policy provision."[12] Courts consider whether there was an admission or recognition of liability; an assurance of payment; a late request for additional information or for time to

---

[12] Blum v. Cherokee Ins. Co., 336 So. 2d 894, 897 (La. App. 4 Cir. 1976); Maurice v. Prudential Ins. Co., 831 So. 2d 381, 385 (La. App. 4 Cir. 2002).

investigate the claim further; an intentional delay of adjustment beyond the limitation period; or prolonged or continuous negotiations, lasting through most of the limitation period, which might tend to hold out a reasonable hope of amicable adjustment.[13] An insurer's acts in investigating the claim or negotiating a possible settlement, however, cannot be deemed to constitute a waiver.[14] Each case "must be decided on its own facts and circumstances."[15]

Considering the facts at issue here, this Court cannot say that Plaintiff could reasonably believe that Defendant would not require compliance with the limitation period. The record makes clear that Defendant never admitted to liability, promised payment, admitted coverage, or engaged in settlement negotiations. Indeed, it denied Plaintiff's Proof of Loss. Defendant sent three reservation of rights letters acknowledging potential coverage issues. The third, sent only a little over a month before the limitation period had run, refused to accept Plaintiff's Proof of Loss in its entirety because of the lack of supporting documentation and reserved its rights under the policy. No reasonable insured would be lulled into inaction by these communications.

Plaintiff points to Defendant's continuous communications to Shamsnia and requests for information as late as one month prior to the expiration of the limitation period as acts that mislead Plaintiff. The record reveals, however, that Defendant's continued communications and requests were a result of Plaintiff's failure to provide the requested information necessary to evaluate the claim. Defendant requested photos of the damage and records of the repairs from Shamsnia on April 7, May 3, June 8, June 15, July 21, August 30, September 23, October 21, November 18, and December 7, 2016. Any delay in the adjustment of this claim was a result of Plaintiff's failure to provide the

---

[13] *Blum*, 336 So. 2d at 898.
[14] LA. REV. STAT. § 22:879.
[15] *Blum*, 336 So. 2d at 897.

requested documentation. It is not reasonable for Plaintiff to assume its claim would be resolved amicably when it had not provided Defendant with sufficient documentation to evaluate the claim.

Finally, Plaintiff complains that Defendant mislead it by failing to apprise it of the policy's limitation period. Plaintiff does not cite to any law requiring Defendant to apprise it of the applicable limitation period. Indeed, it is well settled that "[a]n insured is presumed to know the contents of its policy."[16] "An insured cannot, [therefore,] . . . ordinarily avoid a limitations provision on the grounds of not having been advised of its existence by the insurer."[17] Accordingly, Plaintiff has not created a material issue of fact as to the waiver of the limitation period of its policy with UNIC. Plaintiff's claims under the policy are therefore prescribed, and this Court need not address Defendant's other arguments for dismissal.

### B. Breach of Duty of Good Faith and Fair Dealing

Plaintiff next argues that even if this Court finds that Plaintiff's contractual claims have prescribed, his statutory claims for breach of the duty of good faith and fair dealing have not. Plaintiff asserts a claim for penalties under Louisiana Revised Statutes §§ 22:1973 and 22:1892, alleging that Defendant breached its duty of good faith and fair dealing throughout the investigation of Plaintiff's claim. Although Louisiana law is unsettled regarding whether an insured's claim for an insurer's bad faith are subject to a prescriptive period of one or ten years, courts in this district have consistently applied a one-year limitation period.[18] This Court agrees that a claim for

---

[16] Orleans Par. Sch. Bd. v. Lexington Ins. Co., 118 So. 3d 1203, 1222 (La. App. 4 Cir. 2013).

[17] *Id.*

[18] Belanger v. Geico Gen. Ins. Co., 623 F. App'x 684, 690 (5th Cir. 2015) ("With respect to bad faith claims by an insured (or her assignee), however, it appears no Louisiana state court has ever specifically addressed the applicable prescriptive period. The Eastern District

damages caused by the bad faith acts of an insurer are delictual in nature. Indeed, "a contract is not necessary to bring a bad faith claim against an insurer under Louisiana's penalty statutes."[19] Plaintiff's bad faith claims are therefore subject to a one-year prescriptive period.

Because Plaintiff filed this action on April 20, 2017, any bad faith acts that occurred prior to April 20, 2016 are prescribed. Defendant did not begin substantive investigation into Plaintiff's claim until March 25, 2016. Accordingly, to the extent that Defendant engaged in any bad faith acts prior to April 20, 2016, it is unlikely that Plaintiff was sufficiently aware of them to prompt the running of prescription. "Prescription begins when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is a victim of a tort."[20] Accordingly, Plaintiff's bad faith claims are not prescribed.

Defendant also seeks dismissal of Plaintiff's bad faith claims in its Motion for Summary Judgment Based on Lack of Coverage. Although this Court need not address Defendant's coverage arguments as they relate to the now dismissed breach of insurance contract claim, it must address them to the extent that they are relevant to Defendant's arguments to dismiss Plaintiff's bad faith claims.

Plaintiff alleges that Defendant engaged in the following acts of bad faith: (1) misrepresenting the prescriptive period; and (2) arbitrarily failing to pay its claim within 30 or 60 days of a satisfactory Proof of Loss. As to the first allegation, Plaintiff argues that Defendant acted in bad faith in including Plaintiff's duties under the policy in its reservation of rights letters but

---

of Louisiana has applied the one-year prescriptive period from *Zidan* to claims by an insured in multiple cases.").

[19] Fils v. Starr Indem. & Liab. Co., 2018 WL 2123564, at *7 (La. App. 3 Cir. 2018).

[20] *Id.*

omitting reference to the two-year limitation period. This Court has already held that Defendant had no duty to inform Plaintiff of the limitation period, and Plaintiff does not cite any case holding otherwise. Accordingly, Defendant cannot be said to have been in bad faith for failing to inform Plaintiff of the limitation period.

Second, Plaintiff alleges that Defendant was in bad faith in failing to pay its claim within 30 or 60 days of receipt of the Proof of Loss. In order to establish a cause of action for penalties or attorney's fees and costs under Section 22:1892, a plaintiff must show that "(1) an insurer has received satisfactory proof of loss, (2) the insurer failed to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause."[21] Similarly, Section 22:1973 entitles a plaintiff to damages for the breach of the duty of good faith and fair dealing when (1) an insured has received satisfactory proof of loss, (2) the insurer failed to pay the amount of any claim due within sixty days of receipt thereof, and (3) the insurer's failure is arbitrary, capricious, or without probable cause.[22] Defendant argues that its denial of Plaintiff's Proof of Loss was not arbitrary, capricious, or without probable cause because it had a valid defense to coverage. The Louisiana Supreme Court has stated that it declines to "assess penalties when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense."[23]

The record cannot support a finding that Defendant acted arbitrarily and capriciously in failing to pay Plaintiff's Proof of Loss. "Whether an insurer's refusal to pay a claim is arbitrary, capricious, or without probable cause, warranting imposition of statutory penalties and attorney's fees, depends on

---

[21] Guillory v. Lee, 2009-0075 (La. 6/26/09), 16 So. 3d 1104, 1126–27
[22] *Id.*
[23] *Id.*

the facts known to the insurer at the time of its action."[24] The record shows that Defendant learned as early as July 2016, months before Plaintiff completed its Proof of Loss, that the cause of the damage may have been that the MRI machine was not securely fastened to the floor and the movement of the machine caused the quench pipe to become dislodged. The policy provides that it will not pay for any loss or damage to the interior of any building caused by or resulting from rain unless the building first sustains damage by a covered Cause of Loss to its roof or walls through which the rain entered. The policy also excludes coverage for faulty workmanship, design, or construction. Accordingly, it was not unreasonable for Defendant to question whether the policy provided coverage for the loss sustained. "When an insurer has legitimate doubts about coverage for a particular claim, the insurer has the right to litigate such a questionable claim without being subjected to damages and penalties."[25] Indeed, even now, Defendant subsists in its argument that the policy does not offer Plaintiff coverage pursuant to the Rain Limitation and Faulty Workmanship Exclusion. Even viewing the evidence in a light most favorable to Plaintiff, the Court finds that no reasonable juror could find that Defendant acted arbitrarily, capriciously, or without probable cause in refusing payment. Plaintiff's bad faith claims are dismissed.

## CONCLUSION

For the foregoing reasons, the Motions are GRANTED IN PART, and Plaintiff's claims are DISMISSED WITH PREJUDICE.

---

[24] Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cagle, 68 F.3d 905, 913–14 (5th Cir. 1995).

[25] New York Marine & Gen. Ins. Co. v. McDermott Int'l, Inc., No. 04-2548, 2005 WL 1400450, at *5 (E.D. La. June 1, 2005).

New Orleans, Louisiana this 21st day of August, 2018

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**